# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

KIMBERLY G.,[1]

                       Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner, Soc. Sec. Admin., in
official capacity,[2]

                       Defendant.

Case No. 1:21-cv-00006-TMB

## DECISION AND ORDER

On or about June 16, 2016, Kimberly G. ("Plaintiff") protectively filed an application

for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"),[3]

alleging disability beginning May 27, 2016.[4]  On or about July 19, 2019, Plaintiff also filed

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time.  Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income.  Plaintiff brought claims under Titles II and XVI.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).  For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") 19.  The application summary, not the application itself, appears in the Court's record.  The application summary for DIB lists June 27, 2016, as the application

---

an application for social security income ("SSI") under Title XVI of the Act.[5]  Plaintiff has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[6]  Plaintiff's opening brief asks the Court to reverse and remand the agency's decision for further administrative proceedings.[7]  The Commissioner filed an Answer and a Response Brief.[8]  Plaintiff filed a reply brief on October 6, 2021.[9]  Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[10]  For the reasons set forth below, Plaintiff's request for relief is denied.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[11]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

date.  A.R. 509.

[5] A.R. 33.  Neither the application nor the application summary for Plaintiff's SSI application appear in the Court's record.

[6] Docket 1 (Plaintiff's Compl.).

[7] Docket 17 (Plaintiff's Br.).

[8] Docket 13 (Answer); Docket 18 (Defendant's Br.).

[9] Docket 19 (Reply).

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 2 of 23

conclusion."[12]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[16]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[18]  In particular, the

---

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[19]

## II.    DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

---

[19] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 4 of 23

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[28] *The ALJ determined that Plaintiff had not engaged in substantial activity since May 27, 2016, the alleged onset date.*[29]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the

---

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 23.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 5 of 23

twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; syringomyelia; migraine headaches; gastritis with possible H-pylori; and hearing loss with tinnitus.  The ALJ determined that Plaintiff's anxiety, unspecified depressive disorder, and post-traumatic stress disorder (PTSD) were non-severe impairments.*[31]

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[32]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[34]

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 23–25.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 25.

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: frequent climbing of ramps or stairs; frequent stooping and kneeling; occasional balancing, crouching, and crawling; no climbing of ladders, ropes, or scaffolding; avoidance of concentrated exposure to excessive vibration; avoidance of moderate exposure to excessive noise; and no work activity requiring fine hearing capability.*[35]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[36] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was capable of performing her past relevant work as a grocery cashier and cashier, as actually and as generally performed.*[37]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[38] *The ALJ did not reach Step Five in the disability analysis.*

---

[35] A.R. 26.

[36] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[37] A.R. 32.

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from May 27, 2016, the alleged disability onset date, through January 9, 2020, the date of the ALJ's decision.[39]

## III.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1961 and 54 was years old on the alleged disability onset date.[40]  In the past, Plaintiff worked as a cashier/checker, a laundry worker, and as a grocery cashier.[41]  On September 19, 2016, the Social Security Administration ("SSA") initially determined that Plaintiff was not disabled under the applicable rules and denied Plaintiff's claims upon reconsideration on March 22, 2017.[42]  Plaintiff appeared and testified with representation at a hearing held on May 14, 2018 in Anchorage, Alaska before ALJ Cecilia LaCara.[43]  On July 3, 2018, ALJ LaCara issued an unfavorable ruling.[44]  On May 23, 2019, the Appeals Council remanded Plaintiff's case to a new administrative law judge.[45]  On remand, Plaintiff appeared and testified with representation at a hearing

---

[39] A.R. 32–33.

[40] A.R. 509.  Plaintiff was 58 years old on the date of the ALJ's decision on January 9, 2020.  A.R. 33, 509.

[41] A.R. 32.

[42] A.R. 19, 153, 167.

[43] A.R. 99–112.

[44] A.R. 171–78.

[45] A.R. 187–90.  The Appeals Council remand order vacated ALJ LaCara's hearing decision and remanded for the resolution of the following issues: (1) the hearing decision did not contain an adequate evaluation of the treating and nonexamining source opinions and testimony; (2) the hearing decision did not address the presumption of nondisability arising from Plaintiff's prior unfavorable hearing decision on June 1, 2016; and (3) neither the hearing decision nor the vocational expert addressed and resolved the inconsistency between the limitation of five hours

held on December 4, 2019, in Anchorage, Alaska, before ALJ Paul Hebda.[46]  The ALJ

issued an unfavorable opinion on January 9, 2020.[47]  On January 22, 2021, the Appeals

Council denied Plaintiff's request for review.[48]  On March 22, 2021, Plaintiff appealed the

Commissioner's final decision to this Court.[49]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges that the ALJ's

RFC determination is not supported by substantial evidence because the ALJ failed to

"provide any legitimate rationale for rejecting the treating source opinions" of Stephen

Slobodian, M.D., David Ogilbee, P.T., and Vanessa Herring, D.O.[50]  Defendant disputes

Plaintiff's claims and argues that the ALJ reasonably weighed the medical opinions and

substantial evidence supports the ALJ's findings.[51]  The Court addresses Plaintiff's claims

herein.

1.  *Legal Standard*

Plaintiff filed her Title II application on June 16, 2016, and her Title XVI application

---

of standing and walking in an eight-hour workday and the DOT definition of "light work," requiring
up to six hours of standing and walking in an eight-hour workday.  A.R. 187–89.

[46] A.R. 46–48, 58–74.

[47] A.R. 19–33.

[48] A.R. 1–5.

[49] Docket 1.

[50] Docket 17 at 10–18.

[51] Docket 18 at 2–5.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 9 of 23

on July 19, 2019.[52]   Therefore, the rules prior to the SSA's revisions regarding the evaluation of medical evidence apply in this case.[53]

For applications filed before March 27, 2017, medical opinions from treating physicians are given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in the claimant's case record."[54]   When a treating doctor's opinion is not controlling, it is evaluated pursuant to factors including: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion through relevant evidence; and (5) other relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[55]

In the Ninth Circuit, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial

---

[52] A.R. 19, 32–33.

[53] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence.  82 F.R. 5844, 5869 (1-18-2017).  The revisions became effective on March 27, 2017.  Although Plaintiff's SSI application was filed after the effective date, both of Plaintiff's Title II and Title XVI applications are considered using the prior rules.  *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-5-3-30 (IV)(B), (C).

[54] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[55] 20 C.F.R. §§ 404.1513a(b), 416.913a(b), 404.1527(c)(2), 416.927(c)(2).  These sections apply to claims filed before March 27, 2017.  *See* 20 C.F.R. § 404.614.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 10 of 23

evidence."[56]  When "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[57]  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[58]  An ALJ may reject the opinion of a doctor "if that opinion is brief, conclusory, and inadequately supported by clinical findings."[59]

"Regardless of its source, [the SSA] will evaluate every medical opinion [it] receive[s]."[60]  For claims filed before March 27, 2017, the ALJ affords greater deference to medical opinions by an "acceptable medical source,"[61] such as doctors, than to medical opinions issued by other medical sources, such as physical therapists.[62]  Nonetheless, the ALJ must provide "germane" reasons before discounting the relevant opinions of such non-accepted medical sources.[63]

---

[56] *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005)).

[57] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[58] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[59] *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

[60] 20 C.F.R. §§ 404.1527(c), 416.927(c).  These sections apply to claims filed before March 27, 2017.

[61] 20 C.F.R. § 404.1513 (a) (effective September 3, 2013 to March 26, 2017) (A physical therapist is not considered an accepted medical source).

[62] 20 C.F.R. §§ 404.1527(f), 416.927(f).

[63] *Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015).

The opinions of agency physician consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source.[64] "The weight afforded a non-examining physician's testimony depends 'on the degree to which he provides supporting explanations for his opinions.'"[65] Greater weight may also be given to the opinion of a non-examining expert who testifies at a hearing because he is subject to cross examination.[66] The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.[67]

2. *Stephen Slobodian, M.D.*

Stephen Slobodian, M.D., was Plaintiff's treating physician from approximately February 2014 through November 2016. Dr. Slobodian provided care after Plaintiff's motor vehicle accident on March 20, 2013, and continued care after a second car accident on June 4, 2016.[68] On June 16, July 22, August 8, August 12, August 23, September 23, October 24, and November 28, 2016, Dr. Slobodian opined that Plaintiff was capable of sedentary work for a six-hour workday.[69]

---

[64] 20 C.F.R. §§ 404.1513a(b), 416.913a(b).

[65] *Garrison,* 759 F.3d at 1012.

[66] *Andrews v. Shalala,* 53 F.3d 1035, 1042 (*citing Torres v. Secretary of H.H.S.,* 870 F.2d 742, 744 (1st Cir. 1989)).

[67] *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

[68] A.R. 723–26.

[69] A.R. 716, 718, 725, 779, 781, 782, 783.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 12 of 23

Testifying medical expert, Dr. Kidder, opined that Dr. Slobodian's sedentary work opinion "might have been true for a limited period of time," but not for the requisite 12 consecutive months. Dr. Kidder noted that other evidence in the record showed "excellent strength" in Plaintiff's upper and lower extremities and he did not see anything in the record that would preclude light work.[70] Because Dr. Slobodian's sedentary work opinion was contradicted by the testifying medical expert, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Slobodian's opinion.[71]

The ALJ assigned little weight to Dr. Slobodian's sedentary work opinion. He provided the following reasons: (1) several examinations showing full motor strength in the upper and lower extremities and a normal gait were more consistent with light work; (2) Dr. Slobodian's treatment notes near the time of his opinions conflicted with his opinions, showing "only slight reductions in reflexes and loss of strength"; and (3) Dr. Slobodian's opinion conflicted with testifying medical expert Wayne Kidder, M.D.'s, opinion that Plaintiff was capable of light work and Plaintiff's neurosurgeon's comment that "there was nothing that should be causing [Plaintiff]'s symptoms based on the MRIs."[72]

Plaintiff argues that the ALJ conducted a selective review of the objective evidence,

---

[70] A.R. 54.

[71] *Revels,* 874 F.3d at 654.

[72] A.R. 30.

choosing benign medical findings "while seemingly discounting the more probative findings." She points to the CT scans, MRI scans, and the physical examination performed by Dr. Slobodian shortly after Plaintiff's motor vehicle accident in June 2016.[73] Defendant contends that Dr. Slobodian's medical opinions were inconsistent with the "evidence of normal muscle strength and walking ability" in the record and were inconsistent with Dr. Slobodian's own treatment notes.[74]

Inconsistency with the medical record is a specific and legitimate reason for rejecting a treating physician's opinion.[75] Additionally, a conflict with a doctor's own treatment notes is also a specific and legitimate reason for rejecting a treating doctor's opinion.[76] Shortly after her motor vehicle accident in June 2016,[77] Plaintiff saw Dr. Slobodian. She reported neck, right upper extremity, thoracic, low back, right lower extremity pain, and headaches. On physical examination, Dr. Slobodian observed

---

[73] Docket 17 at 12–14.

[74] Docket 18 at 2–3.

[75] *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).

[76] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict between a treating physician's medical opinion and his own notes is a clear and convincing reason for not relying on the doctor's opinion, and therefore is also a specific and legitimate reason for rejecting it.") (internal quotations and citations omitted).

[77] At the time of Plaintiff's June 2016 motor vehicle accident, the CT scan of the brain showed no acute intracranial process and the CT scan of the cervical spine showed multilevel degenerative changes in the cervical spine seen primarily as cervical vertebral body endplate spurring and multilevel facet hypertrophy. The MRI showed disc spur complexes within the cervical spine greatest at the C5-6 level, where there was bilateral foraminal narrowing, right greater than left; bilateral foraminal narrowing at C6-7, left greater than right; and focal small incidental syrinx at the C7 level. A.R. 702–04.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 14 of 23

tenderness from C3 to T2 and L3 to S1 on palpation; some decrease in reflex muscle testing; muscle strength in the upper and lower extremities between 4/5 and 5/5; and that Plaintiff was able to ambulate on her toes and heels.[78]  On July 22, 2016, Dr. Slobodian opined that Plaintiff was limited to sedentary work for two weeks.[79]

A few weeks later, Plaintiff followed up with provider James McKinley, M.D., for medication refills.  She reported right sided pain, hand numbness, and depression symptoms.  On physical examination, Dr. McKinley observed 5/5 strength, normal sensory, and a normal gait.[80]  On August 4, 2016, Plaintiff's MRI scan of the cervical spine showed cervical spondylosis at C5-C7 with some foraminal narrowing primarily on the right and a stable cervical syrinx at C7.[81]

Plaintiff saw Dr. Slobodian for three more visits, the last of which was November 28, 2016.  Dr. Slobodian did not perform physical examinations at these visits, but adjusted Plaintiff's medications and provided opinions limiting Plaintiff to part-time sedentary work for a month at a time.  These later opinions by Dr. Slobodian are inconsistent with his treatment notes,[82] inconsistent with Dr. McKinley's physical

---

[78] A.R. 723–26.

[79] A.R. 783.

[80] A.R. 752–57.

[81] A.R. 747.

[82] On September 23, 2016, Plaintiff reported increased pain and Dr. Slobodian adjusted her medications.  Dr. Slobodian opined that Plaintiff was limited to part-time sedentary work for one month.  On October 24, 2016, Plaintiff reported feeling "much better."  Dr. Slobodian again opined that Plaintiff was limited to part-time sedentary work for another month.  On November 28, 2016, Plaintiff saw Dr. Slobodian for medication refills and reported urinary incontinence.  A.R. 767–72,

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 15 of 23

examination in July 2016, and inconsistent with MRI results showing a stable cervical syrinx in August 2016. Additionally, Dr. Slobodian's part-time sedentary work opinions were each limited to two weeks up to one month, from approximately July through December 2016. There is nothing in the record to show that Dr. Slobodian opined that Plaintiff would be limited to part-time sedentary work beyond that time.[83]

Later records also support the ALJ's findings. For example, on February 2, 2017, Plaintiff saw Michael Kasabian, M.D., for a disability examination. Dr. Kasabian reviewed Plaintiff's MRI scan from August 2016. On physical examination, Dr. Kasabian observed intact sensory; 5/5 muscle strength in the lower and upper extremities, a grossly normal gait; right patellar reflex of1/4; the ability to get on and off the examination table without assistance; an ability to walk at a normal pace; and no muscle atrophy.[84] In November 2017, Plaintiff's EMG nerve conduction studies were normal, with no signs of radiculopathy.[85] At a provider visit on November 10, 2017, Plaintiff reported she had chronic posttraumatic headaches and was prescribed Botox injections. She reported she had no back pain, no joint pain, and no muscle pain. On physical examination, she had 5/5 muscle strength in upper and lower extremities with some limited range of motion in the right shoulder and no atrophy. Plaintiff was able to rise from sitting normally and walk

---

781–82.

[83] A.R. 716, 718, 725, 779, 781, 782, 783.

[84] A.R. 794–95.

[85] A.R. 836.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 16 of 23

with normal stride length, height, speed, and arm swing.[86]  In January 2018, Plaintiff's EMG/NCV of the lower extremities was normal.[87]  In February 2018, Plaintiff reported significant improvement of her migraines with daily oral medications and Botox injections.[88]  In October 2018, a follow up MRI showed that Plaintiff's syrinx had decreased in size.[89]  In August 2019, Plaintiff underwent a neurosurgical evaluation.  The neurosurgeon opined that Plaintiff was not a neck surgery candidate, that Plaintiff's cervical spondylosis was not completely explained by the radiographic findings, and that Plaintiff's imaging did not explain her right leg pain either.[90]

If the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."[91]  Here, the ALJ reviewed the objective evidence, including Plaintiff's CT scans and MRIs, and provided a review of the treatment notes at and shortly after Dr. Slobodian's sedentary work opinions. He reasonably afforded greater weight to Dr. Kidder's testimony that even if Plaintiff was limited to a sedentary level as Dr. Slobodian opined, the period of such limitation was less than 12 months, and the remainder of the record evidence supported a light work level.[92]

---

[86] A.R. 804–07.

[87] A.R. 1038.

[88] A.R. 1072.

[89] A.R. 1140.

[90] A.R. 1155–57.

[91] *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).

[92] A.R. 27, 30.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 17 of 23

Moreover, the record overall supports the ALJ's reasoning.

Thus, the ALJ's finding that Dr. Slobodian's opinions contradicted the medical expert's opinion, were internally inconsistent, and were not supported by objective medical evidence, constituted specific, legitimate reasons based on substantial evidence in the record for assigning little weight to Dr. Slobodian's opinions.

3. *David Ogilbee, P.T.*

Plaintiff saw PT Ogilbee for physical therapy. On February 5, 2018, PT Ogilbee opined that Plaintiff would find even part-time work activity challenging given Plaintiff's myriad of symptoms.[93] Plaintiff argues that the ALJ "relied on a selective reading of PT Ogilbee's notes in order to reach his conclusion."[94] Defendant asserts that the ALJ reasonably gave little weight to PT Ogilbee's opinion that Plaintiff would struggle to perform even part-time work. Defendant notes that PT Ogilbee's treatment notes contradict his opinion, suggesting PT Ogilbee relied on Plaintiff's self-reports. Specifically, Defendant points out that PT Ogilbee found only mild deficiencies in functioning and that Plaintiff had full strength and the normal ability to walk.[95]

For claims filed before March 27, 2017, physical therapists are not considered an acceptable medical source.[96] Therefore, the ALJ was required to provide only "germane"

_____

[93] A.R. 894.

[94] Docket 17 at 15.

[95] Docket 18 at 4.

[96] 20 C.F.R. § 404.1513 (a) (effective September 3, 2013 to March 26, 2017) (A physical therapist is not considered an accepted medical source).

reasons for discounting PT Ogilbee's part-time work opinion.[97]

The ALJ assigned little weight to PT Ogilbee's opinion. He reasoned that PT Ogilbee's opinion was inconsistent with the objective evidence, including PT Ogilbee's own treatment notes from February 2018. Specifically, the ALJ addressed PT Ogilbee's February 5, 2018 examination, showing mild symptoms and full range of motion in all planes with only mild limitation to end range motion flexion and abduction on the right; mild strength deficits in the right shoulder and lower extremities; slightly decreased reflexes in the right ankle; and slightly decreased reflexes in the biceps, shoulder muscles, and triceps.[98] The ALJ also pointed to a medical record in the same month showing normal strength, grip, gait, and fine motor movements.[99]

As set forth above, Plaintiff's physical examinations in the medical record during the relevant period support the ALJ's findings.[100] The incongruity between PT Ogilbee's own treatment notes and his work opinion and the inconsistency of PT Ogilbee's work opinion with a physical examination in the same month, provide germane reasons for rejecting PT Ogilbee's work opinion.

---

[97] *Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015).

[98] A.R. 30–31, 893–94.

[99] A.R. 30–31. Plaintiff saw Dr. Kasabian for a disability examination on February 2, 2018. On physical examination, Dr. Kasabian observed intact and equal peripheral pulses in all four extremities; intact sensory to light touch; 5/5 muscle strength in all four extremities; normal fine grip dexterity; deep tendon reflexes +2/4 in all four extremities except the right patellar reflex which was ¼; a grossly normal gait; and no muscle atrophy. Dr. Kasabian also observed that Plaintiff was able to get on and off the examining table without assistance and walk at a normal pace. A.R. 794–95.

[100] *E.g.,* A.R. 723–26, 752–57, 794–95, 804–07, 893–94.

The ALJ also rejected PT Ogilbee's opinion because PT Ogilbee relied on Plaintiff's subjective complaints instead of objectively measuring Plaintiff's sensation at the February 5, 2018 examination.[101] An ALJ may generally discount an opinion based on a claimant's unreliable self-report.[102] In this case, PT Ogilbee reported that Plaintiff "[n]ote[d] chronic right hand, plantar foot numbness and tingling/burning sensations which are not alleviated with postural changes or activity."[103] Because Plaintiff's full medical record casts doubt on PT Ogilbee's part-time work opinion and Plaintiff does not contend that the ALJ improperly discounted her symptom testimony, the ALJ's reason for rejecting PT Ogilbee's opinion due to a reliance on subjective self-reports is adequate.[104] In sum, the ALJ provided germane reasons for rejecting PT Ogilbee's part-time work opinion.

    4.  *Vanessa Herring, D.O.*

Vanessa Herring, D.O., was Plaintiff's treating physician. On February 7, 2018, Dr. Herring completed a disability questionnaire. She opined that Plaintiff could sit up to two-thirds and stand up to one-third of an eight-hour workday. She also opined that Plaintiff could lift, walk, and raise her left and right arm above her shoulder very little and that Plaintiff could perform fine and gross manipulation up to two-thirds of an eight-hour

---

[101] A.R. 30.

[102] *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008).

[103] A.R. 894.

[104] *See Coleman v. Saul,* 979 F.3d 751, 757 (9th Cir. 2020) (concluding that the ALJ properly discounted a medical opinion that relied on the plaintiff's self-reported symptoms when the ALJ had also properly discounted the plaintiff's symptom testimony).

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 20 of 23

workday.[105]    Dr. Herring's limitations are contradicted by Dr. Kidder's testimony. Therefore, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Herring's opinions.[106]

The ALJ assigned Dr. Herring's opinion very little weight.  The ALJ reasoned that the objective evidence conflicted with Dr. Herring's opinion.  The ALJ cited Dr. Kidder's testimony that Plaintiff was capable of light work because Plaintiff's physical examinations showed full motor strength in the upper and lower extremities and a normal gait.  The ALJ also noted a normal EMG of the lower extremities performed one month before Dr. Herring's opinion.[107]

Plaintiff asserts that the ALJ selectively reviewed the medical record.  Specifically, Plaintiff points to a treatment note from May 23, 2018, regarding a potential diagnosis of osteoarthritis in the left knee with crepitus with flexion/extension and an antalgic gait.[108] Defendant contends that the ALJ reasonably found that Dr. Kidder's testimony and the record as a whole, undermined Dr. Herring's opinions.[109]

In this case, the record supports the ALJ's finding regarding Dr. Herring's February 2018 opinion.  Plaintiff's citation to a single record of a report of left knee pain with an antalgic gait does not undermine the ALJ's determination.  Moreover, in the same

---

[105] A.R. 908–10.

[106] *Revels,* 874 F.3d at 654.

[107] A.R. 31.

[108] Docket 17 at 16–17; A.R. 1124.

[109] Docket 18 at 4–5.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 21 of 23

treatment note pointed out by Plaintiff from May 23, 2018, Dr. Herring saw no obvious joint deformity or swelling in Plaintiff's left knee, and Plaintiff demonstrated 5/5 muscle strength in the lower extremities. The x-ray taken at the time showed mild degenerative changes of the knee joint, predominantly involving the medial joint compartment and no acute fracture or dislocation.[110] Additionally, Plaintiff's left knee pain appears to have resolved by Plaintiff's visit with Dr. Herring in July 2018 as there is no reference to left knee pain in that treatment record.[111]

The ALJ articulated that the majority of Plaintiff's physical examinations, including those performed by Dr. Herring, showed 5/5 muscle strength in the upper and lower extremities, intact sensation to light touch in the upper and lower extremities, intact reflexes in both the upper and lower extremities, and a normal gait.[112] Other treatment records by Dr. Herring contradict her walking and standing, lifting, and manipulation opinions. For example, in September 2017, Plaintiff reported progressively getting weaker on her right side. However, Dr. Herring noted that Plaintiff's reported symptoms "appear out of proportion – I did not appreciate any significant weakness in her upper or lower extremity that she is complaining of on my exam."[113] Additionally, the ALJ pointed out that EMG studies from November 2017 and January 2018 showed Plaintiff's upper

---

[110] A.R. 1124, 1152.

[111] A.R. 1127–29.

[112] *E.g.,* A.R. 842, 846–47, 1127, 1080.

[113] A.R. 847.

and lower extremities were normal.[114]

In sum, the ALJ properly rejected Dr. Herring's opinions by articulating specific and legitimate reasons that are supported by substantial evidence.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 17 is DENIED, and the Commissioner's decision is AFFIRMED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 14th day of April, 2022 at Anchorage, Alaska.

/s/ Timothy M. Burgess
UNITED STATES DISTRICT JUDGE

---

[114] A.R. 836, 1038.

Case No. 1:21-cv-00006-TMB
Decision and Order
Page 23 of 23